UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBIN G. MICHALAK,<br>      Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of Social Security Administration,<br>      Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:20-CV-276-PPS-JPK<br>)<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on July 22, 2020, and Plaintiff's Opening Brief [DE 20], filed in support of her request for review and remand of the Commissioner of Social Security's decision denying Plaintiff's claim for disability insurance benefits. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 21], and Plaintiff filed a Reply Brief [DE 24].

On November 6, 2020, District Court Judge Philip P. Simon entered an Order [DE 10] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On April 20, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning December 15, 2008, due to multiple impairments: polycystic arthritis, fibromyalgia, C5-C6 fusion, ascending aortic aneurism, left wrist effusion/surgery needed, left

knee cartilage tear/surgery needed, and grade 1 spondylolisthesis of L4-L5. (AR 18, 131, 140, 345).[1] The application was denied initially and on reconsideration. (AR 131-52). Plaintiff then requested a hearing (AR 212-13), which was held before an Administrative Law Judge (ALJ) on September 20, 2017. (AR 76). On February 28, 2018, the ALJ issued an unfavorable decision making the following findings:[2]

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2008 through her date last insured of December 31, 2013.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease with history of cervical fusion, migraines, degenerative joint disease of the left knee with history of arthroscopy, arthritis of the right shoulder and right knee, degenerative joint disease of the right wrist and obesity.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) as the claimant was limited to lifting and/or carrying 10 pounds occasionally, sitting for six hours in an eight hour workday and standing and/or walking for two hours in an eight hour workday, except: the claimant was unable to climb ladders, ropes or scaffolds or handle or finger with the right upper extremity, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, could frequently reach in all directions with the right upper extremity and needed to avoid all exposure to hazards such as dangerous machinery and unprotected heights.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as an operations manager and administrative assistant. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2008, the alleged onset date, through December 31, 2013, the date last insured.

(AR 175-81).

Plaintiff sought review by the Appeals Council, which granted review and remanded for further proceedings before the ALJ. (AR 189-91). Specifically, the Appeals Council observed that the two examples of past relevant work that the ALJ found Plaintiff could perform (operations manager and administrative assistant) both involve frequent handling and fingering, whereas the ALJ also determined that Plaintiff was unable to handle and finger with her right upper extremity. (AR 177, 190). The Appeals Council therefore remanded the case for further consideration of whether Plaintiff could perform any past relevant work, and to obtain vocational expert evidence to assist in evaluating that issue if warranted. (AR 190-91). A second ALJ thereafter conducted another administrative hearing on March 6, 2019, at which the testimony of a vocational expert (VE) was received. (AR 41, 68). On April 4, 2019, this ALJ then issued another unfavorable decision making the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2008 through her date last insured of December 31, 2013.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical spine with a history of cervical fusion, degenerative disc disease of the thoracic spine and degenerative disc disease of the lumbar spine; fibromyalgia, rheumatoid arthritis, osteoarthritis of the bilateral knees and right shoulder, torn meniscus of the left knee, headaches, depression and obesity.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) the claimant was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently and could sit, stand and/or walk for six hours in an eight hour workday, except: the claimant was unable to climb ladders, ropes or scaffolds or reach overhead with the bilateral upper extremities, could occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch and/or crawl; could frequently reach in all other directions and frequently handle, finger and feel with the bilateral upper extremities; she needed to avoid all exposure to vibration, hazards such as moving mechanical parts and unprotected heights, extreme temperatures, wetness and humidity and needed to be permitted to turn at the hips from side to side to view objects rather than at the neck. Furthermore, the claimant would work best in environments where work processes were done in front of the person, such as a desk, bench or table. In addition, the claimant was able to carry out simple tasks in two-hour segments while allowing for normal breaks in moderately noisy work environments as defined by the SCO.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in] 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2008, the alleged onset date, through December 31, 2013, the date last insured.

(AR 20-31).

Plaintiff again sought review with the Appeals Council, which denied the request on April 23, 2020 (AR 4-9), rendering the ALJ's April 2019 decision the final decision of the

4

Commissioner. *See* 20 C.F.R. §§ 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged disability onset, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts two grounds for reversal of the ALJ's April 2019 decision: she contends the ALJ erred in evaluating her subjective symptoms, and further erred in evaluating the

opinion evidence. (Pl.'s Br. at 8-17, ECF No. 20). For the reasons explained below, the Court agrees that remand is warranted for reconsideration of Plaintiff's subjective complaints and some of her treating physician opinions, and the impact of this evidence, if any, on her RFC.

I.  **The ALJ's Evaluation of Plaintiff's Subjective Symptoms**

Plaintiff challenges the ALJ's assessment of her subjective complaints regarding her problems with handling and fingering, bilateral knee pain, and migraine headaches. (ECF No. 20, at 8-13). The ALJ found these complaints not consistent with the objective evidence because: her cervical fusion hardware was stable with signs of only mild spinal degeneration; an examination shortly before her last date insured showed no tenderness, weakness, or loss of range of motion in her joints or muscles; and he believed the record indicated her migraines were managed with prescription medication. (AR 27). As the Commissioner argues, this assessment must be upheld "unless it is patently wrong." (ECF No. 21, at 3). But while this standard of review is deferential, the Court agrees with Plaintiff that the ALJ's stated reasons for rejecting her subjective complaints fail to address fully and fairly the records apparently relied upon, as well as other substantial evidence, and therefore lack substantial support. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th 2018) (rejecting ALJ's subjective symptom analysis under "patently wrong" standard where ALJ "overstated test results and treatment recommendations and drew unjustified inferences").

   A.  **Handling and Fingering**

Regarding Plaintiff's capacity for handling and fingering, the ALJ acknowledged Plaintiff's complaints to medical providers of wrist pain in January and October 2013, and findings of tenderness, mild swelling, and diminished strength in her left wrist in January 2013. (AR 26-27). The ALJ also noted that "imaging studies reveal signs of arthritis of her shoulders and wrists," and Plaintiff's complaints of wrist pain that interfered with certain activities, such as difficulty

7

handling money and writing checks. (AR 23, 27). But the decision discounted these complaints based on "notes from a physical examination conducted right before the last date insured [which] indicated that her muscles and joints were without any tenderness, weakness or loss of range of motion." (AR 27). While no treatment record is cited for this finding, it appears to refer to an October 2013 examination report noting Plaintiff's complaint of wrist pain, in addition to other joint pain, and indicating no swelling or tenderness in her wrists or hands. (AR 27, 569-71). Yet the same record confirmed Plaintiff's fibromyalgia diagnosis (AR 571), which the Seventh Circuit has repeatedly cautioned "cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner*, 879 F.3d at 264 (quoting *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017)); *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) ("we are troubled by the ALJ's purported use of objective medical evidence to discredit Akin's complaints of disabling pain because fibromyalgia cannot be evaluated or ruled out by using objective tests"). This treatment record therefore does little to discredit Plaintiff's complaints of wrist pain, and instead confirms her need for medications to treat it. (AR 571 (noting Lyrica prescription, increasing gabapentin prescription, and advising caution with Norco prescription)).

The ALJ's further reliance on the medications prescribed for Plaintiff's joint pain is also unhelpful. According to the decision, "while imaging studies reveal signs of arthritis of her shoulders and wrists, the record indicates that the claimant has managed her symptoms through the use of prescription medication, such as Lyrica." (AR 27). Again, no treatment record is cited to support this finding, and the full record instead shows that Plaintiff started Lyrica by August 2013, had concerns about it by October 2013, reported that it was not helping by April 2014, and discontinued it the same month. (AR 559, 571, 577, 890). Thus, although the Commissioner is correct that an ALJ may consider the effectiveness and side effects of any medications prescribed

8

to treat a claimant's symptoms (ECF No. 21, at 4), the record here shows both negative side effects (weight gain) and ineffectiveness of the medication the ALJ relied upon to conclude that Plaintiff's claimed symptoms of wrist pain were sufficiently managed. (AR 958, 1068, 1072, 1075, 1079, 1083, 1087, 1095, 1098, 1106, 1215, 1398, 1412, 1421, 1429, 1443, 1451).

Given these discrepancies between the record and the ALJ's stated reasons for discounting Plaintiff's claims of wrist pain, the Court recommends remand for reconsideration of those subjective complaints and Plaintiff's capacity for handling and fingering. Such reconsideration is all the more important given that the Appeals Council also remanded for reconsideration of whether any limited capacity for handling and fingering (determined by a prior ALJ to preclude all handling and fingering with Plaintiff's right upper extremity) prohibited Plaintiff from performing past relevant work (AR 177, 190-91), and the ALJ whose decision is now on review then determined the record called for a lesser restriction of frequent handling and fingering bilaterally. (AR 24, 28-29). This is not to suggest that the second ALJ was bound by any earlier, more restrictive determination, only that the second ALJ's less restrictive determination was insufficiently supported and explained. *See Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) ("While the law may not compel a comparative analysis, we would have expected the second ALJ to explain the basis for reaching such a vastly different conclusion about whether Martin's physical condition affected the jobs she could perform."). Nor does the Court imply that Plaintiff's subjective complaints must be credited or that a more restrictive RFC is required; rather, Plaintiff's capacity for handling and fingering would be for the ALJ to determine during any remand after considering the full record, including the evidence discussed herein. The Court recommends only that the case be remanded for reconsideration of those issues and a clearer explanation with appropriate record support for any determination reached.

### B. Bilateral Knee Pain

The ALJ's assessment of Plaintiff's subjective complaints of bilateral knee pain is similarly unclear. As discussed above, the ALJ determined Plaintiff had, among other severe impairments, osteoarthritis of the bilateral knees and torn meniscus of the left knee. (AR 20-21). The ALJ also acknowledged a history of knee pain and arthroscopy of Plaintiff's left knee in February 2013. (AR 27-28). Yet the ALJ apparently discounted Plaintiff's subjective complaints of knee pain, explaining that she "recovered well after undergoing arthroscopic surgery of her left knee, as it was noted to be unremarkable during a follow-up visit." (AR 27). Once again, this finding references no particular treatment record, but the ALJ also refers to the "notes from a physical examination conducted right before the last date insured" (presumably in October 2013, as discussed above), which "indicated that her muscles and joints were without any tenderness, weakness or loss of range of motion." (AR 27). According to the decision, this examination "suggests that the claimant was able to perform work at the sedentary exertional level," as the previous ALJ had also determined. (AR 27, 177). Yet in the decision now on review, the second ALJ nevertheless found a less restrictive RFC to perform light exertional work, including the ability to sit, stand, and/or walk for six hours in an eight hour workday. (AR 24).

As explained previously in relation to the RFC for handling and fingering, while the second ALJ was not bound by the first ALJ's more restrictive RFC determination, he was obliged to explain the bases for the less restrictive RFC determination reached. *See Martin*, 950 F.3d at 376. The same is true of the second ALJ's less restrictive RFC determination of light work, following the prior ALJ's determination of sedentary work. Additionally, while the Commissioner correctly observes that someone who can do light work can also do sedentary work (ECF No. 21, at 5 n.3), that logic fails to explain the second ALJ's conclusion in one part of the decision that Plaintiff's

10

impairments rendered her "able to perform work at the sedentary exertional level" (AR 27) and his different conclusion two pages later that those impairments allowed for greater (light) exertional work with the severe impairments indicated. (AR 29 ("the claimant had the residual functional capacity to perform work at the light exertional level due to a history of degenerative disc disease with history of cervical fusion, fibromyalgia, rheumatoid arthritis, osteoarthritis of the bilateral knees and right shoulder, torn meniscus of the left knee, headaches and obesity")).

As importantly, to the extent the ALJ's reference to Plaintiff's October 2013 examination suggests that her knee problems did not persist for twelve consecutive months (AR 27), the conclusion overlooks several significant findings. As Plaintiff argues, imaging and treatment records confirm degenerative changes, left knee pain, and a recommendation for arthroscopy in the left knee as early as August 2012. (AR 848, 1290, 1294). Plaintiff was then treated for bilateral knee pain in January 2013 (AR 842); arthroscopy was performed on the left knee in February 2013 (AR 561, 1265, 1271); and use of a cane for abnormal gait was noted. (AR 1268). Plaintiff was then treated for bilateral knee swelling in June 2013, at which time her right knee was drained to relieve the swelling. (AR 1144). And Plaintiff was again treated for bilateral knee pain in November 2013 (AR 860, 862, 865-68), and again after the date last insured in January and April 2014. (AR 572, 876, 890). While the ALJ acknowledges at least some of this evidence (AR 26-27), his summary conclusion that Plaintiff "recovered well after undergoing arthroscopic surgery of her left knee" in February 2013 (AR 27) fails to draw the requisite "logical bridge" to several reports of bilateral knee issues in the six months before, and the ten months after, that surgery. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("Although the ALJ was not required to mention every piece of evidence, providing 'an accurate and logical bridge' required him to confront the evidence in Thomas's favor and explain why it was rejected").

For these reasons, the Court also recommends remand for reconsideration of Plaintiff's subjective complaints of bilateral knee pain and any impact they may have on her RFC. But again, this in no way suggests that those complaints must be credited or that a different RFC is required. The Court concludes only that the ALJ failed to explain adequately the bases for discrediting Plaintiff's knee complaints, and for determining that she is capable of light (as opposed to sedentary) exertional work, particularly when a prior decision determined a capacity for only sedentary work, and the decision now on review confusingly indicates RFCs for both light and sedentary work. (AR 27, 29).

### C. Migraine Headaches

Regarding her complaints of migraine headaches, Plaintiff contends the ALJ improperly discounted the limitations they cause merely because they are "managed through prescription medication." (ECF No. 20, at 12-13 (citing AR 27)). While Plaintiff does not dispute that her headaches are in fact "managed with medication," she notes her testimony that even when she takes that medication (Imitrex), she needs to lie down in a darkened room for the rest of the day. (*Id*. (citing AR 67, 111)). Plaintiff also argues the ALJ improperly failed to determine the frequency of her migraines, and cites her testimony that she had 3 migraines a week before her last date insured (AR 110-11), a treatment note indicating 2-3 headaches per week in March 2014 (AR 517), and records indicating she was hospitalized for severe migraines during the period under review (AR 528, 536, 716, 718, 724, 734, 736, 1150-51). (*See also* ECF No. 20, at 12-13).

Although the ALJ found Plaintiff's headaches to be a severe impairment, and acknowledged she was treated for migraines/headaches in February and May of 2012, he made no RFC accommodation for them, explaining only that "the record indicates that they were managed through the use of prescription medication." (AR 20-21, 24-25, 26-27). The Commissioner faults

Plaintiff for this outcome, arguing that the ALJ made no RFC accommodation for her migraines because "Plaintiff did not meet her burden 'to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.'" (ECF No. 21, at 6 (quoting *Weaver v. Berryhill*, 746 Fed. App'x. 574, 579 (7th Cir. 2018)). But neither the Commissioner nor the ALJ addressed Plaintiff's testimony that she experienced nausea and vomiting when she had a migraine even when she takes her medication (AR 111) and several medical records documenting those symptoms (AR 527-28, 536, 707, 716, 718, 733, 737, 739, 743, 746, 749, 752), including records documenting her photophobia and need to lie in a darkened room when those symptoms occur. (AR 718, 737). The record also indicates a need for Plaintiff to take migraine medication up to 2-3 times per week during the relevant period, and describes her headaches as chronic. (AR 525-26, 639, 738, 755, 763, 765). The ALJ neither addressed this evidence nor explained how the record indicates that Plaintiff's migraines are "managed through the use of prescription medication." (AR 27). That summary conclusion therefore failed to draw an accurate and logical bridge from the evidence to his conclusion that this impairment warranted no RFC accommodation. *See Moon v. Colvin*, 763 F.3d 718, 721-22 (7th Cir. 2014) (faulty analysis of evidence related to migraines was not "logically connected" to RFC).

Accordingly, the Court further recommends remand for reconsideration and a clearer explanation of any symptoms and limitations caused by Plaintiff's headaches during the relevant period, their frequency, and whether they warranted any additional RFC accommodation. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanding for reconsideration of how headaches and blurred vision affected claimant's ability to work); *Lashaun B. v. Saul*, No. 2:19-cv-38, 2019 WL 6112561, at *7 (N.D. Ind. Nov. 18, 2019) ("the ALJ was required to determine the frequency, duration, and limiting effects of migraines/headaches") (citing *Indoranto* and

*Moon*). And to the extent any additional RFC accommodation is determined, the ALJ would also be required to apprise any VE relied upon of such limitation(s). *See Indoranto*, 374 F.3d at 474. But as before, this is not to say that an additional RFC accommodation is required, only that the ALJ failed to address the evidence discussed above, and otherwise support or explain his finding that no RFC accommodation was needed. Whether Plaintiff's migraines during the relevant period warranted such accommodation would be for the ALJ to determine during any remand ordered.

## II.     The ALJ's Evaluation of the Opinion Evidence

Plaintiff next challenges the ALJ's evaluation of the opinion evidence. She argues the ALJ improperly disregarded the opinions of her treating physicians regarding her fibromyalgia and rheumatoid arthritis, and instead relied upon outdated medical opinions by the state agency reviewers who were unable to address later records concerning these impairments. (ECF No. 20, at 14-15). According to Plaintiff, these asserted errors impeded determination of the limitations caused by her rheumatoid arthritis in particular, because no other physicians opined as to how that condition (which the ALJ found to be a severe impairment) affected her functioning during the period under review. (*Id*.). The Court agrees with these arguments only in part.

### A.     The Treating Physicians' Opinions

Plaintiff submitted three opinions from her family practice physician, Dr. William Pierce, and three opinions from her rheumatologist, Dr. Vinay Reddy, all issued over two years after her December 2013 date last insured. (AR 988-92, 997-1000, 1236-39, 1247-50, 1460-69). In sum, these opinions concluded that Plaintiff was incapable of even sedentary work, as she is able to lift at most five pounds rarely (or no weight at all), and the symptoms relating to her impairments would cause her to miss at least four or five days of work per month. (AR 29, 988-92, 997-1000, 1236-39, 1247-50, 1460-69). The ALJ accorded each of these opinions "little weight," as he found

them "inconsistent with the record," because (according to the ALJ) "physical examinations conducted before the date last insured were essentially unremarkable except for some swelling and weakness of [Plaintiff's] left knee and wrist." (AR 29). Additionally, the ALJ noted that these opinions purported to confirm Plaintiff's limitations as far back as 2008 (AR 988, 997, 1236, 1247, 1460, 1465), although Dr. Pierce had been treating her since 2012 and Dr. Reddy had been treating her since 2015. (AR 29, 1460, 1465). Regarding Dr. Reddy's opinions, the Court finds no error in this reasoning. Because he began treating Plaintiff over nineteen months after her date last insured, and his three opinions were issued over two years, three years, and five years after the relevant period (AR 1000, 1250, 1463), the Court agrees with the ALJ that Dr. Reddy's opinions were too remote to be probative of the period under review. *See Zoch v. Saul*, 981 F.3d at 597, 602 (7th Cir. 2020) (ALJ properly rejected opinions by physicians "who treated [claimant] after her date last insured . . . because their treatment and diagnoses fell outside the relevant disability period").

Dr. Pierce's opinions are a different matter. As the Seventh Circuit explained in *Zoch*, "[w]e typically expect an ALJ to consider an opinion by a doctor who treated the claimant after the relevant period if it offers a retrospective diagnosis that is corroborated by evidence produced during the relevant period." 981 F.3d at 602; *see also McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018) ("a medical advisor's retrospective diagnosis may be considered only if 'corroborated by evidence contemporaneous with the period of eligibility'" (quoting *Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009)). And here, the record indicates Dr. Pierce began treating Plaintiff monthly in 2012, over a year before her December 2013 date last insured. (AR 1236, 1465). The record also shows that Dr. Pierce treated Plaintiff consistently after her last date insured for, among other conditions, fibromyalgia and repeated rheumatoid arthritis flares. (AR 963, 993-94, 1007, 1010-11, 1013, 1018-20, 1023-24, 1028-29, 1032-33, 1037-38, 1042-43, 1047, 1052-53, 1057-58,

15

1208-09). Given the ALJ's finding that fibromyalgia and rheumatoid arthritis were severe impairments before Plaintiff's last date insured, and Dr. Pierce's familiarity with her condition both before and after her last date insured, it was appropriate for the ALJ to consider Dr. Pierce's retrospective opinions regarding the effects of that condition, even though those opinions were issued after the last date insured. And while the ALJ found Dr. Pierce's opinions "inconsistent with the record" because "physical examinations conducted before the date last insured were essentially unremarkable except for some swelling and weakness of [Plaintiff's] left knee and wrist" (AR 29), that summary explanation again failed to address records documenting problems with Plaintiff's upper and lower extremities during the year preceding her last date insured. (*See*, *e.g.*, AR 556, 561, 842-48, 851-53, 858-60, 862, 865-68, 1144, 1265, 1268, 1290, 1293-94).

For these reasons, the Court recommends remand also for reconsideration of Dr. Pierce's opinions regarding the effects of Plaintiff's fibromyalgia and rheumatoid arthritis prior to her last date insured. To be clear, however, this recommendation in no way implies that these opinions should be credited during any remand proceeding. Indeed, there may be reasons why the ALJ could find the strict limitations recommended by Dr. Pierce unsupported by the record. The Court concludes only that the retrospective nature of those opinions did not preclude their consideration, and that the ALJ's summary rejection of the opinions as inconsistent with the record failed to draw the requisite logical bridge to the evidence regarding Plaintiff's impairments noted above. *See Lambert v. Berryhill*, 896 F.3d 768, 774-75 (7th Cir. 2018) (ALJ's inaccurate summary of medical evidence failed to build accurate bridge to assessment of treating physician's opinions).

  **B.**  **The Agency Reviewers' Opinions**

Finally, Plaintiff argues that, in addition to rejecting the opinions of her treating physicians, the ALJ improperly relied upon the medical opinions of the state agency reviewers on the initial

review and reconsideration of her application. Plaintiff contends these opinions were outdated, as the reviewers lacked additional records concerning her fibromyalgia, and had no opportunity to assess the physical limitations related to her rheumatoid arthritis confirmed after her date last insured. (ECF No. 20, at 13-15). Because that information might have changed the agency reviewers' opinions regarding Plaintiff's physical abilities during the relevant period, she argues the ALJ should not have relied on those opinions when determining her RFC. (*Id*. at 14-15). *See also Lambert*, 896 F.3d at 776 ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). And because the ALJ rejected all treating physician opinions, Plaintiff further argues that the ALJ improperly determined the effects of her rheumatoid arthritis in particular, as no other physician opined on the limitations caused by that impairment. (ECF No. 20, at 15).

The Commissioner does not dispute the existence of such additional evidence or the agency reviewers' inability to evaluate it. Instead, the Commissioner explains that "the ALJ acknowledged additional evidence of 'tenderness and weakness of [Plaintiff's] neck, shoulders and wrists caused by arthritis," and therefore included additional limitations beyond those recommended by the agency reviewers in Plaintiff's RFC. (ECF No. 21, at 8 (quoting AR 28)). Thus, according to the Commissioner, "the ALJ properly considered the State agency opinions and reasonably adopted their findings where supported by the record, but the ALJ also found additional limitations that newer evidence supported." (*Id*.). There are two problems with this argument.

First, as discussed above, the additional evidence at issue concerned the impact of Plaintiff's fibromyalgia and arthritis on her upper *and* lower extremities, and therefore potentially affected any conclusion that Plaintiff was capable of the lifting, carrying, standing, and walking

requirements of light work. (*See*, *e.g.*, 1018-20, 1023-24, 1028-29, 1032-33, 1037-38, 1042-43, 1047-48, 1208-09). Yet the ALJ acknowledged only additional evidence of upper extremity tenderness and weakness and added limitations regarding reaching, handling, and fingering, but adhered to the agency reviewers' recommendations regarding lifting, carrying, standing, and walking. (AR 24, 28). The decision thus fails to draw a logical bridge between the additional evidence that post-dated the agency reviewers' opinions and the RFC determination.

Second, and relatedly, in concluding that additional medical evidence warranted only some additional RFC limitations and not others, the ALJ appears to have assessed the significance of those medical findings independently, given that he rejected the opinions of Plaintiff's treating physicians. The Seventh Circuit has repeatedly cautioned that such independent evaluation of medical findings can be problematic. *See*, *e.g.*, *Lambert*, 896 F.3d at 774 ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves") (collecting Seventh Circuit decisions); *McHenry*, 911 F.3d at 871 ("We have said repeatedly that an ALJ may not 'play doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny") (brackets omitted, quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). For these reasons, the Court further recommends that the ALJ also consider during any remand whether additional medical opinions are needed to determine the limitations caused by Plaintiff's fibromyalgia and rheumatoid arthritis, particularly in the event that Plaintiff's medical opinions are again rejected. While discretionary, "use of a medical expert can help ALJs resist the temptation to 'play doctor,' . . . by evaluating evidence on his or her own," and "may be especially helpful when evaluating the severity of a condition–like fibromyalgia–marked by subjective and fluctuating symptoms." *Gebauer v. Saul*, 801 Fed. App'x 404, 408-09 (7th Cir. 2020) (collecting Seventh Circuit decisions).

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court grant the relief requested in Plaintiff's Opening Brief [DE 20], reverse the decision of the Commissioner of the Social Security Administration, and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 21st day of December, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT